**In the Matter of the ESTATE**
**OF HENRY O. CREQUE, Deceased**

Probate No. 12-1957
District Court of the Virgin Islands
Div. of St. Thomas and St. John

June 23, 1964

WILLIAM W. BAILEY, ESQ., Charlotte Amalie, Virgin Islands, *for petitioner Cleone Creque Sewer*

JOHN L. MADURO, ESQ., Charlotte Amalie, Virgin Islands, *for the Estate of Henry O. Creque*

JAMES A. BOUGH, ESQ., Charlotte Amalie, Virgin Islands, *for children of Isabel Shupe*

GORDON, *Judge*

On January 2, 1962, Cleone Creque Sewer filed a "claim of heirship" in the Estate of Henry O. Creque, Probate No. 12-1957. In the petition to establish heirship the petitioner claimed that she was the daughter of Henry O. Creque, the decedent, who died intestate; that she was born in Cruz Bay, St. John, Virgin Islands on November 3, 1937; and that her mother was Acthyl Jurgen, now Sewer,

of Cruz Bay, St. John, Virgin Islands. The petitioner prayed that the court recognize her as the heir of Henry O. Creque and that she should be awarded her rightful share of the estate of the decedent. On February 21, 1962, a motion was filed in which it was asked that the claim of heirship should be transferred for hearing from the District Court Commissioner to the Judge of the District Court. By an order of February 26, 1962, the District Court Commissioner transferred the matter to the civil division of the District Court.

Hearings on the "claim of heirship" of Cleone Creque Sewer were held on November 19, 1962, June 17, 1963, and February 11, 1964, at which time testimony was adduced. The brief on behalf of the petitioner, Cleone Creque Sewer, was filed on March 24, 1964. The joint brief on behalf of the Estate of Henry O. Creque and the children of Isabel Shupe was filed on May 25, 1964.

■ The court finds that the decedent was the father of the petitioner, Cleone Creque Sewer. He so recognized her as his daughter both openly and notoriously. At the hearings on this matter, testimony was adduced which showed that: the decedent told the midwife who delivered the petitioner that he was the father of the petitioner; Mrs. Halpike, also known as Mrs. Jurgen, was asked by the decedent to care for the petitioner, whom he acknowledged as his daughter; the decedent gave money to Mrs. Halpike to help pay for the support of the petitioner; the decedent when campaigning for public office in St. John introduced the petitioner to an assembled group and openly proclaimed that the petitioner "was his daughter and was his blood"; while the petitioner lived with Lieutenant of Police Jurgen in his home on St. John, Jurgen received money paid by check from the decedent for the support of the petitioner; the petitioner had always been known in the community as Cleone Creque; the mother of

the petitioner testified that Henry O. Creque was the father of the petitioner. At various times the decedent told the petitioner that he would formally recognize her as his daughter in writing, but the decedent never did so. Thus, from all of the testimony taken, the court concludes that Cleone Creque Sewer was the illegitimate child of the decedent, Henry O. Creque.

Having made this finding, the court must then determine, whether it has the power to adjudicate paternity after the decedent's death. On May 18, 1957, Section 1 of the Act of May 18, 1949, entitled "An Act Regarding the Property Status of Illegitimate Children" was in effect and read as follows:

"SECTION 1. An illegitimate child shall upon the approval of this measure and thereafter be considered to have the same status, for the purpose of the descent of the property of his or her ancestors, as if he or she were born in lawful wedlock provided that in cases where the ancestor in question is a father, he admitted of record paternity of such child by signing the official birth certificate; or *he was or is* adjudged the father of such child by a court of competent jurisdiction; and provided further that such father shall have all the rights and privileges provided by law to fathers of legitimate children." (Emphasis added.)

■ The petitioner's right as an illegitimate child to the heirship accrued upon the death of her putative father, May 18, 1957, and not when the claim was filed with the court on January 2, 1962, or on the date of the court's adjudication that the decedent was the putative father of the petitioner.

■ The 1949 Act allowed the court in two instances of time to adjudicate the decedent the putative father. The first was in a paternity suit brought by the mother of the illegitimate child. The second instance was when the decedent could be adjudged the putative father in a proceeding subsequent to the death of the putative father.

The court is of the opinion that the case of *In the Matter of the Estate of Heyn*, 3 V.I. 354, 163 F. Supp. 431, reversed on other grounds, 4 V.I. 97, 266. F.2d 206, is controlling. In that case, Judge Maris found that the father of the petitioner could be adjudicated such after his death pursuant to the Act of May 18, 1949 [supra]. Judge Maris stated in his opinion: "The Act of 1949 provides that it shall be applicable if the father admitted paternity of record or 'was or is adjudged the father of such child.' It is clear that this language contemplates such an adjudication either before or after the death of the putative father. It was doubtless to make this point certain that the Legislative Assembly inserted the otherwise tautological words 'or is' in the Act." (3 V.I. 354, 357.)

■ The law as codified in the Virgin Islands which took effect on September 1, 1957, 15 V.I.C. § 84(13) amends the 1949 Act by stating that the putative father *"was* adjudged" the same. The court is of the opinion that the amendment makes reference to a paternity proceeding while the putative father was living and not a situation which is involved here.

■■ The statute presently before the court is in derogation of the common law, thus in effect a remedial statute. When applying the rules of statutory construction to remedial statutes, the general rule is that such statutes should be construed liberally. State v. Chavez, 42 N.M. 569, 82 P.2d 900, 902. Professor Atkinson in his treatise on the *Law of Wills*, pg. 85, makes the following comment on reform legislation which affects illegitimacy: "At any rate there is every reason why the courts should construe existing statutes broadly in favor of the unfortunate child." The court agrees with the suggestion of Professor Atkinson that legislation which is now before the court should be construed broadly and in favor of the innocent child.

■ The court concludes that it has jurisdiction to find that the decedent was the putative father under the Act

of May 18, 1949, although under the present statute 15 V.I.C. § 84(13) enacted subsequent to the death of the decedent the court would not have jurisdiction over the subject matter of the petition.

 Counsel for the estate contends that this petition is barred by the statute of limitations, 5 V.I.C. § 31, which is ten years. The court refers counsel to case of *In the Matter of the Estate of Heyn*, supra, wherein the putative father died on March 8, 1947, yet the petition filed by the illegitimate daughter in the estate of the petitioner's grandmother wherein the paternity was ascertained was not filed until July 6, 1957. The statute of limitations did not preclude the entertainment of the petition in that case. Therefore, the court is of the opinion that the statute of limitations does not preclude the granting of the petition in the case at bar. The court further concludes that the petitioner is not guilty of laches in bringing her claim four and one-half years after the death of her putative father.

The court concludes as a matter of law that Cleone Creque Sewer shall take her statutory share of the decedent's estate.

Counsel for the petitioner, Cleone Creque Sewer, shall file with this court an order and judgment in conformity with this opinion.